UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOWAKI KOMATSU,

                    Plaintiff,

          -against-

THE CITY OF NEW YORK, ET AL.,

                    Defendants.

23-CV-5406 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

          Plaintiff, who is appearing *pro se*, brings this action alleging that Defendants violated his

rights. By order dated July 17, 2023, the Court granted Plaintiff's request to proceed *in forma*

*pauperis* ("IFP"), that is, without prepayment of fees. The Court dismisses the complaint for the

reasons set forth below.

## STANDARD OF REVIEW

          The Court must dismiss an IFP complaint, or any portion of the complaint, that is

frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see*

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See*

Fed. R. Civ. P. 12(h)(3).

          While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

### A.   Plaintiff's history in this court

Plaintiff Towaki Komatsu has brought approximately 25 *pro se* actions in this court, virtually all of which have been dismissed. *See, e.g.*, *Komatsu v. Urban Pathways, Inc.*, No. 22-CV-9080 (LTS) (S.D.N.Y. Sept. 5, 2023) (dismissed for failure to state a claim); *Komatsu v. City of New York*, No. 22-CV-0424 (LTS) (S.D.N.Y. Jan. 3, 2023) (amended complaint dismissed for failure to comply with prior filing injunction, failure to comply with Rule 8, and as time-barred); *Komatsu v. City of New York*, No. 20-CV-6510 (LLS) (S.D.N.Y. Oct. 22, 2020) (dismissed as frivolous, for failure to state a claim on which relief may be granted, for seeking monetary relief from defendants who are immune from such relief, and under the Anti-Injunction Act).

Several of Plaintiff's actions have been dismissed due to his vexatious conduct, including repetitive, voluminous and irrelevant filings. *See, e.g.*, *Komatsu v. The City of New York*, ECF 1:18-CV-03698 (LGS) (GWG) (S.D.N.Y. Sept. 27, 2021) (ECF 627) (order involuntarily dismissing suit due to Plaintiff's vexatious conduct, including his repetitive voluminous and irrelevant filings); *Komatsu v. The City of New York*, ECF 1:20-CV-7046 (ER) (S.D.N.Y. June 6, 2023) (dismissing nine consolidated cases due to Plaintiff's "vexatious and harassing litigation history").

Since December 20, 2020, Plaintiff has been subject to a prefiling injunction requiring him to seek permission to file "any new action in this Court against the City of New York, city officials, and members of the NYPD regarding their alleged involvement in preventing him from attending public meetings with the Mayor." *Komatsu*, ECF 1:20-CV-07046, 45 (ER). Moreover,

on November 3, 2021, the United States Court of Appeals for the Second Circuit entered an injunction requiring Plaintiff to file a motion seeking leave of the court prior to filing any future appeals. *See Komatsu v. City of New York*, No. 21-511 (2d Cir. Nov. 3, 2021); *see also, e.g.*, *Komatsu v. Urban Pathways*, No. 23-654 (2d Cir. Aug. 15, 2023) (denying leave to appeal because appeal "does not depart from Petitioner's 'prior pattern of vexatious filings'" (internal citation omitted)); *Komatsu v. United States*, No. 23-CV-95 (2d Cir. Aug. 2, 2023) (same); *Komatsu v City of New York*, No. 23-946 (2d Cir. June 27, 2023) (dismissing appeal for Plaintiff's failure to seek leave to file the appeal); *Komatsu v. Ramos*, No. 22-1787 (2d Cir. Dec. 22, 2022) (dismissing appeal because it does "not depart from Petitioner's 'prior pattern of vexatious filings'" (internal citation omitted)); *Komatsu v. City of New York*, No. 22-1796 (2d Cir. Dec. 22, 2022) (same); *Komatsu v. City of New York*, No. 22-1396 (2d Cir. July 5, 2022) (dismissing appeal for Plaintiff's failure to seek leave to appeal).

As relevant here, Plaintiff has also pursued litigation against individuals employed by the City of New York, the State of New York, and private individuals regarding his lease agreement with Urban Pathways ("Urban"), subsequent state court litigation brought by Urban against Plaintiff, interactions with employees of New York City's Human Resources Administration ("HRA"), and interactions with employees of the New York State Office of Temporary and Disability Assistance ("OTDA"). *See, e.g.*, *Komatsu*, No. 20-CV-6510 (S.D.N.Y. Oct. 22, 2023); *Komatsu*, No. 22-CV-9080 (S.D.N.Y. Sept. 5, 2023). Many of the defendants named in this action – including the City of New York, Ann Marie Scalia, Daniel Tietz, Molly Park, and Nigel Marks – have also been named as defendants in Plaintiff's prior actions.

**B.    Procedural history of this action**

Plaintiff filed the complaint in this action on June 26, 2023. (ECF 1.) On July 10, 2023, Plaintiff filed an amended complaint (ECF 4) and a proposed order to show cause for

preliminary injunction and temporary restraining order (ECF 3). Plaintiff's amended complaint also included a request that the action be transferred to a venue "outside of the Second Circuit." (ECF 4, at 9.) By order dated July 20, 2023, the Court construed Plaintiff's request for the action to be transferred as a motion for recusal, and denied the motion. (ECF 9, at 2-4.) The Court also denied Plaintiff's request for preliminary relief. (*Id.* at 4-7.)

On July 21, 2023, Plaintiff filed a notice of interlocutory appeal of the Court's July 20, 2023 order. (ECF 12.) On July 24, 2023, Plaintiff filed a letter seeking reconsideration of the Court's order, which the Court denied by order dated July 31, 2023. (ECF 15.) By mandate issued January 12, 2024, the Court of Appeals denied Plaintiff's motion for leave to file an appeal of the Court's July 20, 2023 order because "the appeal does not depart from [Plaintiff's] 'prior pattern of vexatious filings.'" No. 23-1087 (2d Cir. Jan. 12, 2024) (internal citation omitted).

Now that the Court of Appeals has dismissed the appeal, this Court now has jurisdiction to consider Plaintiff's amended complaint.

**C.    The amended complaint in this action**

Named as Defendants in the amended complaint are the City of New York; HRA employees Ann Marie Scalia and Lisa Fitzpatrick; DSS Commissioner Molly Park; DSS Chief Contracting Officer Vincent Pullo; DSS General Counsel Scalia; HRA "senior administrator" Lisa Fitzpatrick; OTDA attorneys Nigel Marks and Samuel Spitzberg; OTD Commissioner Daniel Tietz; the John Doe owner of Top Choice, a supermarket located in the Bronx; and the John Doe owner of Z&H Cleaners, located in Ridgewood, New York. The following allegations are taken from the amended complaint, which is 181 pages long, including attachments, and includes allegations regarding multiple events, many of which appear unrelated to each other and many of which have been the topics of previous litigation filed by Plaintiff in this court. The

Court has attempted to organize Plaintiff's allegations into the following general categories and has limited its summary to those allegations relevant to Plaintiff's enumerated causes of action against the defendants named in this action.

### 1.    Loss of benefits and access to court

Plaintiff receives public assistance benefits from HRA an OTDA, including cash assistance and benefits under the Supplemental Nutrition Assistance Program ("SNAP" or "food stamps"). On February 27, 2023, Plaintiff was "defrauded" of $340 in cash assistance and $750 in SNAP benefits. (ECF 4, at 8-9.) The SNAP benefits were stolen through a transaction at Top Choice Meat Market, and the cash assistance benefits were stolen through a transaction at an ATM "owned or rented" by Z&H Cleaners in Ridgewood, New York. (*Id.* at 126.) Plaintiff does not explain how or by whom his benefits were stolen, although he references news articles about benefits being stolen from electronic benefits cards.

On April 3, 2023, Plaintiff reported the theft of benefits to the NYPD and sent an email to Marks and Scalia in which he "directed" Marks "to immediately cause OTDA to order HRA to immediately replace the food-stamp and [cash assistance] benefits that [Plaintiff] was defrauded." (*Id.* at 127-28.) Plaintiff claims that "[t]he fact that that those benefits have illegally not been replaced for my use entitles me to immediate partly summary judgment partly against the City of New York." (*Id.* at 128.)

On April 15, 2023, Plaintiff visited Top Choice and demanded that the owner void the transaction and reimburse Plaintiff for the benefits, which the owner declined to do. (*Id.* at 127.)

New York State submitted a plan to the United States Department of Agriculture ("USDA"), which oversees the SNAP program, to replace SNAP benefits of individuals who were defrauded of such benefits. The USDA approved New York's plan on April 14, 2023, and, at the time Plaintiff filed the amended complaint, the State expected to implement that plan by

August 7, 2023. (*Id.* at 110.) Plaintiff alleges that New York "is taking longer than other states to implement its plan for this." (*Id.*) Plaintiff states that Jarrod Parker of OTDA told him that New York's processes would be available beginning in late June 2023. Because that date is different than the projected completion date in August 2023, Plaintiff maintains that Parker "lied" to him. (*Id.* at 111.) Because other states have been quicker to reimburse stolen benefits, HRA is "illegally discriminating against [Plaintiff]" and "OTDA is illegally condoning that [discrimination]." (*Id.* at 112-13.)

The failure of the City and other defendants to immediately reimburse Plaintiff for the cash assistance and food stamps benefits allegedly stolen from his account prevented Plaintiff from being able "to print and mail" to the Supreme Court and opposing counsel "all of the copies of the petition for a writ of certiorari" for one of Plaintiff's appeals by the deadline of May 21, 2023. (*Id.* at 8.) Plaintiff maintains that, because he was unable to timely file his petition for *certiorari*, Defendants violated his rights under the First and Fourteenth Amendments. Plaintiff demands "severe and immediate sanctions" against HRA and "immediate reinstate[ment] and reassignment" of the four underlying district court cases for which he was unable to timely file a certiorari petition. (*Id.* at 9.)

With respect to administrative exhaustion of his claims regarding his allegedly stolen benefits, Plaintiff states that he "would pursue [his] claims in this case by commencing an article 78 proceeding," but has not done so because "the judges and other personnel who have previously conducted such proceedings between HRA and I chose to violate my constitutional and other legal rights during them." (*Id.* at 110.)

In an unrelated series of events, on May 9, 2023, HRA mailed Plaintiff a notice indicating that his application to participate HRA's "Fair Fares" program had been approved. The notice

stated that he could expect to receive a new Metrocard enabling him to purchase rides at discount prices before his current card expired. He did not receive the new card until after his previous card expired, however. Plaintiff maintains that he had to pay "$34 strictly due to HRA's derelict failure to provide [him] with a new Metrocard" before his previous card expired. (*Id.* at 128-29.)

### 2.  Plaintiff's "HRA Contract"

Plaintiff alleges throughout the complaint that Scalia and HRA have violated what he refers to as his "HRA contract." Plaintiff's contention that he has rights under an "HRA contract" appears to be based on the following. On July 18, and July 19, 2019, Plaintiff had conversations with former DSS Commissioner Banks at public resource fair and a public town hall meeting. Scalia sent Plaintiff an email following up on his discussion with Banks that concluded with Scalia saying she would assist Plaintiff "in any way possible." (*Id.* at 116.) Plaintiff includes the email and the attached letter from Scalia as attachments to the amended complaint. (*See id.* at 170-71.)

The cover email from Scalia states, "Attached you will find a letter that addresses concerns you raise with Commissioner Banks at a town hall meeting in Queens. Thank you." (*Id.* at 170.) In the letter, which Plaintiff refers to as his "HRA contract," Scalia follows up on the concerns Plaintiff raised with Banks, including Plaintiff's concerns regarding fees for a storage unit he rented; an inspection of his apartment unit; potential job opportunities; and a request for a legal services provider. Scalia's letter concludes with the statement, "We will continue to try to address your concerns and assist you in any way possible." (*Id.* at 171.) Plaintiff asserts that "[n]either that e-mail message nor my HRA contract [i.e., the attached letter] contain any caveat, qualifying remark, disclaimer, and expiration date. This confirms that my HRA contract is a binding and fully-enforceable and permanent agreement." (*Id.* at 116.) Moreover, Scalia

7

> issued my HRA contract on HRA's behalf as well as her own [which] is reflected
> by the fact that the last sentence in that agreement begins with the word 'We.'
> This establishes that all HRA personnel are legally required to continuously assist
> me in any way that is possible instead of ways that are discretionary, practical,
> convenient, and not burdensome.

(*Id.* at 116.) Plaintiff maintains that Scalia's allegedly binding agreement to help in "any way

possible" overrides established OTDA policies, such as its policy stating that DHS clients do not

have a right to choose their own temporary placements. (*See id*. at 55.) Plaintiff further alleges

that, despite this alleged "contract," Scalia and "most other HRA personnel have consistently,

substantially, and prejudicially violated [his] HRA contract's terms." (*Id.* at 116-17.)

## D.    Exclusion from HRA offices

Plaintiff alleges that Defendant Pullo is responsible for prohibiting Plaintiff from visiting

HRA's Manhattan office to "examine proposed contracts between a) HRA, DHS, and DSS on

the one hand and b) various vendors on the other prior to public hearings about those contracts."

(*Id.* at 131.) Although Plaintiff asserts that he has been barred from HRA offices since 2018, he

alleges two incidents in June and July 2023 in which he sent emails to Pullo and others

requesting that they "[i]mmediately make certain" that he has access to the "37th Floor in HRA's

offices at 150 Greenwich Street" at a specific time to examine proposed contracts. (*Id.* at 132,

133.) He includes a copy of an email in which Pullo states that his Office cannot accommodate

the time at which Plaintiff demanded to examine the contracts, but instead offered to allow

Plaintiff to inspect the documents remotely through Microsoft Teams. (*Id.* at 132.) In response to

Pullo's offered accommodation, Plaintiff demands "equal and identical treatment" and says he

will pursue criminal charges against the HRA employees. (*Id.* at 132.)

### 3.    Miscellaneous allegations

The following are some of the other allegations included in the complaint. In October

2021, Plaintiff's cash assistance benefits were "cancelled" without prior notice. (*Id.* at 118.)

Plaintiff alleges that HRA corrected the underpayment, but he nonetheless maintains that he was entitled to a fair hearing for the purposes of obtaining discovery. (*See id.*)

On June 21, 2023, Plaintiff received a call from "someone who works for OTDA . . . to conduct a [fair hearing] between HRA and [Plaintiff] about some unknown matter." (*Id.* at 119.) Plaintiff alleges his rights were violated because HRA did not apprise him of the date and time for the fair hearing nor inform him in advance of its subject matter or provide him with his "case record."[1] (*Id.* at 119.)

Plaintiff alleges he was assaulted by an unidentified third party in the Bronx on June 9, 2023, and maintains that HRA personnel denied him "extra cash-assistance" for purchasing Advil, Neosporin, gauze, bandages, and a cold compress. (*Id.* at 133-34.) He seeks to hold HRA liable for the assault because he was only in the area in which the assault occurred because of a court hearing related to his state-court litigation against HRA.

Plaintiff recounts events that occurred during town hall meetings and meetings at HRA offices in 2017, in which he was accused of being disruptive and belligerent. (*See id.* at 102-05.) He also presents a series of allegations related to HRA administrative hearings and state court proceedings that occurred in 2017, in which he accuses HRA personnel, state court judges, and the Appellate Division of committing illegal acts against him. (*See, e.g.*, *id.* at 105-06.)

### 4.    Claims for relief

Plaintiff enumerates 21 claims for relief, including claims under the First Amendment; the Due Process Clause of the Fifth and Fourteenth Amendments; and the Equal Protection Clause of the Fourteenth Amendment; claims for "Obstruction of Justice by Impeding Access to

---

[1] Emails copied into the text of complaint show that Plaintiff "demand[ed]" that an "immediate fair hearing" take place on June 3, 2023, regarding an allegedly "illegal shelter transfer." (*Id.* at 122-23.)

the Courts"; "Abuse of Process"; Civil RICO, 18 U.S.C. § 1964; conspiracy to violate civil rights; and various claims under state law. (*See id.* at 136-42.) Plaintiff generally does not state which of the previously alleged facts support or are associated with each of his enumerated claims for relief.

Plaintiff seeks a wide array of declaratory, injunctive, and monetary relief, which includes the following: Top Choice and Z&H Cleaners reimburse Plaintiff for the benefits that were allegedly stolen; a declaratory judgment that Scalia's letter to Plaintiff "has always been and remains a binding, permanent, and fully-enforceable agreement" and that all DSS and HRA employees "are required by [this] contract to continuously and permanently assist [Plaintiff] in any way possible," (*id.* at 143); all City and State employees be "prohibited from being above the first floor in the building located at 150 Greenwich Street in Manhattan for the same length of time that [Plaintiff has] been unable to be above that floor since October of 2017" (*id.*); all contracts between DSS, HRA, and DHS that Plaintiff has been prevented from examining be declared "void" (*id.*); Scalia personally reimburse Plaintiff for the public benefits of which he has been defrauded (*id.* at 144); Plaintiff be housed in a hotel in Manhattan below 125th Street and be provided with wide range of amenities; HRA must provide Plaintiff "talented pro-bono legal representation within 72 hours for all litigation matter that I have that are about housing issues, wage-theft issues, civil rights issues, and government benefit issues" (*id.* at 146); HRA must hire Plaintiff "for a full-time job within 48 hours" at an annual salary of $225,000 (*id.*); and a "restraining order against the USMS" directing it "permanently end the USMS' crimes against me within 24 hours"[2] (*id.* at 151).

---

[2] The Court notes that the U.S. Marshals Service is not a party to this action.

**DISCUSSION**

A.    **Rule 8**

Although *pro se* litigants enjoy the Court's "special solicitude," *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (per curiam), their pleadings must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Id.* (citing *Twombly*, 550 U.S. at 555). But the Court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

While a complaint's statement of claim must contain sufficient factual detail, it should not be "prolix" *(i.e.*, lengthy) or contain unnecessary details. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting that, under Rule 8(a)(2), the statement of claim "should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage'" (citation omitted)); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"); *see also Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr. Inc.*, No. 17-CV-3670 (KPF), 2018 WL 3910827, at *12 (S.D.N.Y. Aug. 14, 2018) ("[C]ourts in this Circuit have dismissed complaints that are unnecessarily long-winded, unclear, or conclusory.") "Complaints which ramble, which

11

needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system." *Barsella v. United States*, 135 F.R.D. 64, 66 (S.D.N.Y. Mar. 18, 1991) (internal quotation marks and citation omitted).

When "a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . ., to strike any portions that are redundant or immaterial . . . or to dismiss the complaint." *Salahuddin*, 861 F.2d at 42. Dismissal without prejudice is customary, but dismissal without leave to amend may be appropriate in "extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible." *Id.*

Here, Plaintiff's 181-page amended complaint does not comply with Rule 8 because it does not provide a short and plain statement of his claims. While the Court has attempted to outline some core facts and to discern some potential claims Plaintiff seeks to bring, his tangents and inclusion of irrelevant facts and background makes it difficult for the Court – and certainly for any defendant – to fully understand how the alleged facts provide a basis for Plaintiff's claims. Nor does Plaintiff's "Causes of Action" section help in identifying which facts in the preceding 135 pages are relevant to which claims. For example, Plaintiff asserts claims under the First Amendment against the City of New York, Fitzpatrick, Marks, Park, Pullo, Scalia, Spitzberg, and Tietz. He writes,

> The individual defendants who this claim applies to are liable for it due to the information that discussed earlier in the complaint. Similar to what I stated earlier, Mr. Tietz is listed here because my claims against this is partly due to his policies and lack of proper oversight over OTDA's personnel. Ms. Park is liable for this claim partly because she has illegally condoned the fact that I haven't been provided discovery material from HRA for my OTDA litigation.

(ECF 4, at 137.) These facts are vague, conclusory, and appear to be wholly unrelated to asserting a claim under the First Amendment. In support of this claim for "Obstruction of Justice by Impeding Access to the Courts, Plaintiff states, "The defendants that this claim applies to are liable for it due to the information that I discussed earlier in this complaint." (*Id.*)

Plaintiff's complaint therefore does not comply with Rule 8. Although the Court does not dismiss the complaint based on its failure to comply with Rule 8, the Court notes that Plaintiff has been repeatedly instructed on the requirements of Rule 8, and has been put on notice that his complaints fail to comply with the Rule. *See, e.g.*, *Komatsu*, ECF 1:20-CV-7046, 183, at 8-12 (ER) (S.D.N.Y. July 16, 2021) (summarizing the Rule 8 and explaining why Plaintiff's complaint fails to comply with it); *Komatsu*, ECF 1:22-CV-0424, 43, at 8-9 (LTS) (S.D.N.Y. Jan. 3, 2023) (same); *Komatsu*, ECF 1:21-CV-11115, 9, at 6-7 (LTS) (S.D.N.Y. Mar. 2, 2022) (same). Despite Plaintiff's general non-compliance with Rule 8, the complaint does enumerate specific claims for relief. In recognition of Plaintiff's *pro se* status, the Court will proceed to address his enumerated claims.

## B.      Fourteenth Amendment Due Process Claim

Plaintiff brings claims under the Due Process Clause, alleging that he was deprived of his public assistance benefits without due process. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Where a plaintiff sues a defendant "to enforce procedural due process rights, a court must determine (1) whether a [liberty or] property interest is implicated, and if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citation omitted). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (citations omitted). Generally, due process requires a hearing before a final

deprivation of an individual's liberty or property interest. *See Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

Public assistance benefits "have long been afforded constitutional protection as a species of property protected by the federal Due Process Clause." *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005) (quoting *Goldberg*, 397 U.S. at 262 & n.8).

"[W]here a plaintiff alleges a deprivation of property in violation of the due process clause, the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not plaintiff took advantage of the state procedure." *Vialez v. New York City Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991). Access to a fair hearing, under N.Y. Soc. Serv. Law § 22 and 18 N.Y.C.R.R. § 358, and further review in the state courts in an Article 78 proceeding to challenge adverse determinations in connection with government entitlement programs, such as SNAP and cash assistance, satisfies due process. *See Banks v. HRA*, No. 11-CV-2380, 2013 WL 142374, at *3 (E.D.N.Y. Jan. 11, 2013); *Vapne v. Eggleston*, No. 04-CV-565 (NRB), 2004 WL 2754673, at *5 (S.D.N.Y. Dec. 1, 2004).

Here, Plaintiff alleges in the amended complaint, filed on July 11, 2023, that his cash assistance and SNAP benefits were stolen from his EBT card at two retail establishments on February 27, 2023. Plaintiff reported the theft to the NYPD and sent an email to OTD employees Marks and Scalia "direct[ing]" them to "immediately" replace his stolen benefits. (ECF 4, at 127-28.) An OTDA employee subsequently told Plaintiff that New York would soon be implementing a process under a newly passed state law to replace electronic benefits determined to be stolen. (*Id.* at 111.)

Even if the Court assumes that Plaintiff had a property interest in recovering the benefits stolen by a third party at a private establishment, his claim is not viable because he does not allege that he pursued state court remedies such as requesting a fair hearing or pursuing relief in state court under Article 78. Even if the Court accepts Plaintiff's implied suggestion that OTD administrative review would have been futile because of the impending procedural changes regarding stolen electronic benefits, Article 78 review still remained available to him. *See Klein v. New York State Office of Temp. & Disability Assistance*, 84 A.D.3d 1378, 1379-80 (2d Dep't 2011) (Article 78 proceeding holding that OTD policy barring replacement of benefits in certain situations rendered further administrative procedures futile, and finding no basis to reverse OTD's decision to deny replacement of benefits).[3] In fact, Plaintiff acknowledges that he could have pursued relief under Article 78, but asserts that, because he believes his rights were violated during previous, unrelated Article 78 proceedings, he should not be required to go to state court. (*See* ECF 4, at 110.) Plaintiff's belief that his rights were violated in previous Article 78 proceedings does not, however, render the Article 78 remedy unavailable to Plaintiff in this instance. As noted above, access to a fair hearing and state court review in an Article 78 proceeding satisfy the due process requirement. *See Banks*, 2013 WL 142374, at *3; *Vapne*, 2004 WL 2754673, at *5.

In the amended complaint, Plaintiff states that OTD staff informed him that the agency would be implementing new procedures in August 2023 for review of claims for stolen benefits. Indeed, in May 2023, in recognition of the increase in scam-related benefit theft, the New York

---

[3] Prior enactment of the new procedures discussed below, New York's rules generally required social services agencies to deny requests for reimbursement of stolen electronic cash or SNAP benefits if investigation of the computer record by the agency determined that the benefits were validly issued to the recipient. *See* N.Y. Comp. Codes R. & Regs. tit. 18, §§ 352.7(g)(2), 387.16(o).

State Legislature enacted Social Services Law § 152-d, which, along with the federal Consolidated Appropriations Act of 2023, allows for the replacement of electronically stolen cash and SNAP benefits. In August 2023, while Plaintiff was pursuing his interlocutory appeal, OTD implemented its new procedures, including a new application form, for replacing electronically stolen benefits. The new procedures generally require that a claim be filed within 30 days of discovery of the theft, although there is an exception for situations like Plaintiff's, where the fraudulent transaction occurred prior to August 21, 2023. For retroactive SNAP claims for theft occurring from October 1, 2022 and cash assistance claims for theft occurring from January 1, 2022 to August 21, 2023, the application for reimbursement must have been filed by April 1, 2024, or within 30 days of the discovery of the theft, whichever is later.[4] Plaintiff therefore had until April 1, 2024 to file a claim for reimbursement of his benefits stolen in February 2023. If such claims are denied, the recipient may challenge the denial in a Fair Hearing.[5]

It is unclear whether Plaintiff has taken advantage of the new OTD procedures. In any event, as discussed above, his allegations demonstrate that, at the time he filed his amended complaint, he had not pursued his administrative remedies or sought relief in state court. Because Plaintiff failed to take advantage of the state procedure available to him, he cannot now claim that the procedure was inadequate. *See Vialez*, 783 F. Supp. at 114.

Similar principles apply to Plaintiff's claims that he did not receive a new "Fair Fares" card from HRA until after his previous card had expired. (*See* ECF 4, at 128-29.) Even if the

---

[4] *See* Office of Temporary and Disability Assistance, EBT Scam Alert, https://otda.ny.gov/workingfamilies/EBT-scam-alert.asp (last viewed Feb. 28, 2024).

[5] *See* Office of Temporary and Disability Assistance, Administrative Directive Memorandum, 23-ADM-07, Aug. 17, 2023, https://otda.ny.gov/policy/directives/2023/ADM/23-ADM-07.pdf.

Court assumes that Plaintiff has a property right in receiving a new card before the old card expired, the Court is unable to decipher any facts suggesting that Plaintiff took advantage of the available state remedies or that such remedies were inadequate.

The Court therefore dismisses Plaintiff's procedural due process claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff has previously asserted claims for procedural due process and has been repeatedly instructed by the court as to the elements of such a claim, including the requirement that New York's administrative procedures and Article 78 satisfy due process. *See, e.g.*, *Komatsu*, ECF 1:21-CV-11115, 9, at 9-11 (LTS) (S.D.N.Y. Mar. 2, 2022) (explaining elements of procedural due process in the context of public benefits, including that Plaintiff must pursue available state remedies, and finding he failed to state a viable claim); *Komatsu*, ECF 1:20-CV-6510, 10, at 10-12 (LLS) (S.D.N.Y. Oct. 22, 2020) (same).

In light of Plaintiff's history of litigating procedural due process claims, the Court finds that he was or should have been aware when he filed this action that his pleadings were deficient and lacked merit. *See Sledge v. Kooi*, 563 F.3d 105, 109-10 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigant may be charged with knowledge of particular pleading requirements); *Mercer v. New York City Hous. Auth.*, No. 22-CV-3202 (LTS), 2022 WL 1556886, at *4 n.3 (S.D.N.Y. May 16, 2022) (*pro se* plaintiff should have been aware of elements of a Fair Housing Act claim after district court previously explained the elements of such a claim); *Thomas v. City of New York*, No. 19-CV-11028 (LLS), 2020 WL 1847843, at *3 (S.D.N.Y. Apr. 10, 2020) (*pro se* plaintiff should have been aware of elements of a Section 1983 claim based on extensive litigation history); *Hobbs v. Dep't of Transp. NYC*, No. 20-CV-0512 (CM), 2020 WL 1140794, at *5 (S.D.N.Y. Mar. 6, 2020) (*pro se* plaintiff should have been

aware of elements of Section 1983 and ADA claims based on history of bringing such claims);
*Forsythe v. Amalgamated Warbasse Houses, Inc.*, Nos. 10-CV-2549 (KBF), 10-CV-4609 (KBF),
2012 WL 1481512, at *9 (S.D.N.Y. Apr. 27, 2012) (*pro se* plaintiff should have aware of
elements of his claims based on litigation history). Accordingly, the Court declines to grant
Plaintiff leave to amend his procedural due process claims.

**C.     Fourteenth Amendment Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment "commands that no State
shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is
essentially a direction that all persons similarly situated should be treated alike." *City of
Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Phillips v. Girdich*, 408 F.3d
124, 129 (2d Cir. 2005). As a general rule, the equal protection guarantee of the Constitution is
satisfied when the government differentiates between persons for a reason that bears a rational
relationship to an appropriate governmental interest. *See Heller v. Doe*, 509 U.S. 312, 320
(1993).

Because Plaintiff does not allege that he is part of a protected group that has been treated
differently, the Court assumes he is seeking to proceed under a "selective enforcement" theory.
(*See* ECF 4, at 138 (asserting unspecified claims of "[d]iscrimination and selective-
enforcement").) To state a claim under a selective enforcement theory, a plaintiff must allege
facts suggesting that: (1) the plaintiff, compared with others similarly situated, was selectively
treated; and (2) that such selective treatment was based on impermissible considerations such as
race, religion, an intention to inhibit or punish the exercise of constitutional rights, or with a
malicious or bad faith intent to injure a person. *See JF v. Carmel Central Sch. Dist.*, 168 F. Supp.
3d 609, 621 (S.D.N.Y. 2016) (citing *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

Plaintiff does not plead facts showing how any defendant violated his rights under the Equal Protection Clause of the Fourteenth Amendment. He does not identify or describe others who are similarly situated or allege any facts suggesting that he was discriminated against based on any impermissible considerations. Plaintiff therefore fails to state a claim on which relief can be granted under the Equal Protection Clause, and the Court dismisses such claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff has previously asserted equal protection claims and has been repeatedly instructed by the court as to the elements of such a claim. *See, e.g.*, *Komatsu*, ECF 1:21-CV-11115, 9, at 11-12 (LTS) (S.D.N.Y. Mar. 2, 2022) (determining Plaintiff failed to state an equal protection claim and granting him leave to amend to state a viable claim); *Komatsu*, ECF 1:20-CV-8540, 32, at 16-17 (ER) (S.D.N.Y. July 16, 2021) (discussing elements of equal protection claim and noting that Plaintiff did not allege "similarly situated individuals engaged in comparable behavior, but were treated differently").

In light of Plaintiff's history of litigating equal protection claims, the Court finds that he was or should have been aware when he filed this action that his pleadings were deficient and lacked merit. *See Sledge*, 563 F.3d 105, 109-10; *Mercer*, 2022 WL 1556886, at *4 n.3; *Thomas*, 2020 WL 1847843, at *3; *Hobbs*, 2020 WL 1140794, at *5; *Forsythe*, 2012 WL 1481512, at *9. Accordingly, the Court declines to grant Plaintiff leave to amend his equal protection claims.

**D.    Access to the court**

Under the First Amendment, individuals have a right to access the courts. To state an access to courts claim, a plaintiff must allege that a defendant has hindered his ability to litigate a "nonfrivolous, arguable underlying claim," *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002), and that the "defendant caused actual injury," meaning that the defendant "took or was

responsible for actions that hindered [the] plaintiff's efforts to pursue a legal claim," *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997).

Here, Plaintiff alleges that, by failing to immediately replace his stolen SNAP and cash assistance benefits, HRA and other defendants caused Plaintiff to lack the funds needed to copy and mail a petition for a *writ of certiorari* to the Supreme Court. They therefore, according to Plaintiff, impeded his access to the court. Even if the Court assumes that Plaintiff's underlying litigation was not frivolous, Plaintiff's allegations do not suggest that HRA (or any defendant) "caused" his failure to file a timely petition for *certiorari*. According to the amended complaint, the Supreme Court granted Plaintiff a 60-day extension of time to file a petition for *certiorari*, which Plaintiff apparently failed to do. His assertion that HRA refused to immediately reimburse him for the stolen benefits, which it was not required to do, does not suggest that it unconstitutionally denied Plaintiff access to the courts. The Court therefore dismisses Plaintiff's First Amendment access to courts claim for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Because the defects in Plaintiff's access to court claim cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend this claim. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

**E.     First Amendment free speech claims**

Plaintiff appears to allege that his First Amendment rights were violated when Pullo did not allow Plaintiff to review certain proposed City contracts at HRA's offices at a time of Plaintiff's liking. Although the municipal building is public property, "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'n*, 453 U.S. 114, 129 (1981); *see Loper v. N.Y.C. Police Dep't*, 999 F.2d 699, 703 (2d Cir. 1993). Rather, the state, "like the private owner

of property, may legally preserve the property under its control for the use to which it is
dedicated." *Rosenberger v. Rectors & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)
(internal quotation marks and citation omitted).

The extent to which government may regulate expressive activity on public property
depends upon the character of the public property in question. *See Perry Educ. Ass'n v. Perry
Local Educators' Ass'n*, 460 U.S. 37, 44 (1984). The Second Circuit has sorted government
property into four forum classifications. Ranging from those triggering the highest level of
scrutiny to the least, these are: (1) traditional public fora, (2) designated public fora, (3) limited
public fora, and (4) nonpublic fora. *See R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d
533, 539 (2d Cir. 2011). After determining the type of forum at issue, the Court "then applies the
requisite standards for that forum to the challenged speech restriction." *Am. Freedom Def.
Initiative v. Metro. Transp. Auth.*, 880 F. Supp. 2d 456, 469 (S.D.N.Y. July 20, 2012).

The Court assumes that the HRA building is a limited public forum. *See Tiffany v. Vill. of
Briarcliff Manor*, No. 95-CV-8335 (LAP), 1997 WL 177895, at *6 (S.D.N.Y. Apr. 14, 1997)
(noting, but not deciding, that a municipal building might be considered a limited public forum).
A limited public forum is one that the government has opened up for some speech, but that is
"limited to use by certain groups or dedicated solely to the discussion of certain subjects."
*Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 679 n.11 (2010) (internal quotation marks and
citation omitted). Restrictions on speech in a limited public forum "must be viewpoint-neutral
and reasonable in light of the forum's purpose." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 507
(S.D.N.Y. 2013) (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001)); *see
also Rosenberger*, 515 U.S. at 819.

Here, Plaintiff does not allege that Pullo or HRA discriminated against his point of view or imposed an unreasonable restriction on his speech. He alleges that he demanded to come into HRA's office at a specific time and date in order to inspect proposed City contracts. Pullo responded by telling Plaintiff that his preferred time did not work, offered Plaintiff an opportunity to view the documents remotely, and asked Plaintiff to provide times and dates that worked for him. Nothing in the Plaintiff's allegations suggests that Defendants discriminated against his point or view or imposed an unreasonable restriction on his speech. Plaintiff therefore fails to state a First Amendment claim arising from his alleged denial of access to HRA offices to review City contracts. The Court dismisses such claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff has significant experience litigating First Amendment claims arising from his being prohibited from accessing various public events in the City. *See Komatsu v. City of New York*, No. 20-CV-7046 (ER) (June 6, 2023) (discussing nine consolidated cases brought by Plaintiff in which he alleged violations of his First Amendment rights with respect to various public meeting and hearings). In light of this experience, the Court finds that he was or should have been aware when he filed this action that his pleadings were deficient and lacked merit. *See Sledge*, 563 F.3d 105, 109-10; *Mercer*, 2022 WL 1556886, at *4 n.3; *Thomas*, 2020 WL 1847843, at *3; *Hobbs*, 2020 WL 1140794, at *5; *Forsythe*, 2012 WL 1481512, at *9. Accordingly, the Court declines to grant Plaintiff leave to amend his First Amendment claims.

## F.    Claims under Civil Provision of RICO

Plaintiff attempts to assert claims under the civil provision of RICO, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . may

sue . . . in any appropriate United States district court and shall recover threefold the damages[.]" 18 U.S.C. § 1964(c). In order to state a violation of Section 1962, and thus, a claim under the civil RICO enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting § 1962(a)-(c)). Such a person must also "allege that he was 'injured in his business or property *by reason of* a violation of section 1962.'" *Id.* (quoting § 1964(c) (italics in original)).

To state a claim of a civil RICO conspiracy under § 1962(d), a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). A plaintiff must also show that "if the agreed upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-45. Racketeering activity is defined to include a wide variety of criminal offenses, such as wire fraud, mail fraud, commercial bribery, bank fraud, and money laundering. § 1961(1).

Plaintiff does not allege any facts that would support any claim under civil RICO – either a claim for civil enforcement or one of conspiracy. He has not plausibly alleged that any defendant has engaged in a criminal offense. His allegation that Defendants were "accomplices" to acts of "mail and wire fraud" committed by "others" (ECF 4, at 140) are conclusory and insufficient to suggest a violation of the RICO statute. The Court therefore dismisses Plaintiff's claims under the civil RICO statute for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff has a lengthy history of bringing civil RICO claims in this court. *See, e.g.*, *Komatsu*, ECF 1:22-CV-9080, 7, at 17 (LTS) (S.D.N.Y. Jan. 26, 2023) (dismissing Plaintiff's RICO claims for failure to allege any activity that would support a RICO claim); *Komatsu*, ECF 1:21-CV-11115, 9, at 12-13 (LTS) (S.D.N.Y. Mar. 2, 2022) (same); *Komatsu*, ECF 1:20-CV-6510, 10, at 18-19 (LLS) (S.D.N.Y. Oct. 22, 2020) (same). In light of this experience, the Court finds that he was or should have been aware when he filed this action that his pleadings were deficient and lacked merit. *See Sledge*, 563 F.3d 105, 109-10; *Mercer*, 2022 WL 1556886, at *4 n.3; *Thomas*, 2020 WL 1847843, at *3; *Hobbs*, 2020 WL 1140794, at *5; *Forsythe*, 2012 WL 1481512, at *9. Accordingly, the Court declines to grant Plaintiff leave to amend his civil RICO claims.

## G.   Conspiracy claims

Plaintiff asserts claims of "[c]onspiracy to [v]iolate [c]ivil [r]ights," which the Court understands to arise under 42 U.S.C. §§ 1983, 1985, and 1986. To state a conspiracy claim under Section 1985, a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). Furthermore, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004) (quotation omitted). Claims under Section 1985 must be alleged "with at least some degree of particularity" and must include facts showing that the "overt acts which defendants engaged in . . . were reasonably related to the promotion of the claimed conspiracy." *Hernandez v. Goord*, 312 F. Supp. 2d 537, 546 (S.D.N.Y. 2004). A claim under Section 1986 is only valid "if there is a

viable conspiracy claim under § 1985." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994).

To state a claim for conspiracy under Section 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

Here, Plaintiff fails to allege an agreement or factual details concerning the inception or operation of any conspiracy. He merely offers conclusory allegations that Defendants conspired against him for the purpose of denying him benefits or preventing him from filing legal documents in the Supreme Court. The Court therefore dismisses Plaintiff's conspiracy claims under Sections 1983, 1985, and 1986 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff has a history of filing meritless conspiracy claims in this court. *See Komatsu v. United States*, ECF 1:21-CV-1838, 196, at 11-12 (RD) (RLM) (S.D.N.Y. Jan. 19, 2023) (discussing elements of claim under Sections 1985 and 1986 and dismissing Plaintiff's claims because he did not allege that any defendant acted with racial animus or other invidious discrimination); *Komatsu*, ECF 1:21-CV-11115, 9, at 13-14 (LTS) (S.D.N.Y. Mar. 2, 2022) (Plaintiff failed to state a conspiracy claim); *Komatsu*, ECF 1:20-CV-6510, 10, at 17-18 (LLS) (S.D.N.Y. Oct. 22, 2020) (same). In light of this experience, the Court finds that he was or should

have been aware when he filed this action that his pleadings were deficient and lacked merit. *See Sledge*, 563 F.3d 105, 109-10; *Mercer*, 2022 WL 1556886, at *4 n.3; *Thomas*, 2020 WL 1847843, at *3; *Hobbs*, 2020 WL 1140794, at *5; *Forsythe*, 2012 WL 1481512, at *9. Accordingly, the Court declines to grant Plaintiff leave to amend his conspiracy claims.

## H.    Abuse of process claims

Plaintiff brings claims for abuse of process. "While malicious prosecution concerns the improper issuance of process, '[t]he gist of abuse of process is the improper use of process after it is regularly issued.'" *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (alteration in original). To state a claim of abuse of process under Section 1983, a plaintiff must allege facts showing that a defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.* Under New York law, the first prong requires the institution of some legal procedure, either civil or criminal. *See Bd. of Educ. v. Farmingdale Classroom Tchrs. Ass'n.*, 38 N.Y.2d 397, 400-01 (1975). Plaintiff has not alleged that the City or any individual defendants instituted legal process against him regarding any events described in the complaint. Plaintiff therefore fails to allege any facts suggesting a plausible abuse of process claim, and the Court dismisses such claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff has previously been instructed as to the elements of an abuse of process claim, particularly with respect to the requirement that a plaintiff must allege that a defendant instituted civil or criminal process against him. *See Komatsu*, ECF 1:20-CV-7046, 183, at 18-19 (ER) (S.D.N.Y. July 16, 2021) (describing elements of an abuse or process claim and holding that Plaintiff has failed to allege any defendant instituted legal process against him). In light of this experience, the Court finds that he was or should have been aware when he filed this action that

his pleadings were deficient and lacked merit. *See Sledge*, 563 F.3d 105, 109-10; *Mercer*, 2022 WL 1556886, at *4 n.3; *Thomas*, 2020 WL 1847843, at *3; *Hobbs*, 2020 WL 1140794, at *5; *Forsythe*, 2012 WL 1481512, at *9. Moreover, because nothing in the amended complaint suggests that Plaintiff was subject to legal process, the Court finds that amendment of his abuse of process claims would be futile. Accordingly, the Court declines to grant Plaintiff leave to amend his abuse of process claims. *See Curcione*, 657 F.3d at 123-24; *Salahuddin*, 861 F.2d at 42 (2d Cir. 1988).

## I.     Municipal liability

Plaintiff names the City of New York as a defendant. When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff does not state a claim against the City of New York. As a threshold matter, as discussed above, he has not alleged facts suggesting an underlying constitutional violation and, absent an underlying constitutional violation, there can be no Section 1983 claim for municipal

liability. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Furthermore, even if Plaintiff had alleged a constitutional violation, he does not allege facts suggesting that such violation was caused by a policy, practice, or custom of the City of New York. The Court therefore dismisses Plaintiff's Section 1983 claims against the City of New York for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff has been repeatedly instructed as to the elements of pleading a municipal liability claim under Section 1983. *See Komatsu*, ECF 1:22-CV-9080, 7, at 16-17 (LTS) (S.D.N.Y. Jan. 26, 2023) (stating elements of a municipal liability claim under Section 1983 and dismissing Plaintiff's claims for failure to allege facts suggesting a policy, practice, or custom of the City violated his constitutional rights); *Komatsu*, ECF 1:20-CV-6510, 10, at 12-13 (LLS) (S.D.N.Y. Oct. 22, 2020) (same); *Komatsu*, ECF 1:21-CV-11115, 9, at 14 (LTS) (S.D.N.Y. Mar. 2, 2022) (same). In light of this experience, the Court finds that he was or should have been aware when he filed this action that his pleadings were deficient and lacked merit. *See Sledge*, 563 F.3d 105, 109-10; *Mercer*, 2022 WL 1556886, at *4 n.3; *Thomas*, 2020 WL 1847843, at *3; *Hobbs*, 2020 WL 1140794, at *5; *Forsythe*, 2012 WL 1481512, at *9. Moreover, as stated above, because Plaintiff has not alleged an underlying constitutional violation or any policy, practice, or custom of the City, the Court finds that amendment of his municipal liability claims would be futile. Accordingly, the Court declines to grant Plaintiff leave to amend his municipal liability claims. *See Curcione*, 657 F.3d at 123-24; *Salahuddin*, 861 F.2d at 42 (2d Cir. 1988).

**J.    Criminal law claims**

Plaintiff's claims for "[o]bstruction of justice" (ECF 4, at 137) and his request that certain defendants receive "monetary fines" (*id.* at 143) suggest that Plaintiff may be attempting to assert claims for violations of criminal law. Plaintiff cannot initiate the arrest and prosecution of an individual in this Court because "the decision to prosecute is solely within the discretion of

the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct

prosecuting attorneys or the Court to initiate a criminal proceeding against Defendant, because

prosecutors possess discretionary authority to bring criminal actions, and they are "immune from

control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457

F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses Plaintiff's claims seeking criminal

prosecution for failure to state a claim. *See* 28 U.S.C § 1915(e)(2)(B)(ii).

Because Plaintiff's pleadings cannot be amended to state a claim under criminal law, any

amendment would be futile, and the Court declines to grant Plaintiff leave to amend his claims

under criminal law. *See Curcione*, 657 F.3d at 123-24; *Salahuddin*, 861 F.2d at 42 (2d Cir.

1988).

## K.     **State law claims**

Plaintiff brings various state law claims, including claims for violation of his "HRA

contract." A district court may decline to exercise supplemental jurisdiction over state law claims

when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and

only state-law claims remain, the federal court should decline the exercise of jurisdiction."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal

claims of which the Court has original jurisdiction, the Court declines to exercise its

supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New

York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms

the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which

district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522

U.S. 156, 173 (1997))).

**CONCLUSION**

The Court dismisses the amended complaint for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this action.

SO ORDERED.

Dated:   April 15, 2024
         New York, New York

                      /s/ Laura Taylor Swain
                        LAURA TAYLOR SWAIN
                Chief United States District Judge